**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **DEBORAH WOODS, THERESA GHOOLSBY, and TERESA RIEDER** | **PLAINTIFFS** |
| **v.** | **CAUSE NO. 3:09-CV-00313-CWR-LRA** |
| **SOUTHERNCARE, INC.** | **DEFENDANT** |

**ORDER DENYING MOTION TO DISMISS**

In this *qui tam* action brought pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, Deborah Woods, Theresa Goolsby,[1] and Teresa Rieder ("the Relators"), allege, *inter alia*, that SouthernCare, Inc. ("SouthernCare") fraudulently billed Medicare and/or Medicaid for hospice services provided to individuals who did not qualify for such services.[2] Before the Court is SouthernCare, Inc.'s Motion to Dismiss for Lack of Jurisdiction, Docket No. 25, and Plaintiffs' Submission of Evidence and Authority in Support of Jurisdiction, Docket No. 84. The Court finds that the Relators' evidence is sufficient to survive the Motion to Dismiss, which the Court has treated as a motion for summary judgment.[3] *See* Docket No. 83, at 4-5.

**DISCUSSION**

The FCA limits a court's jurisdiction over *qui tam* actions by what is referred to as the public disclosure bar:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or

---

[1] Goolsby's name is spelled incorrectly on the docket and in the Complaint.

[2] The background of this case is stated in detail in a previous Memorandum Opinion and Order. *See United States ex rel. Woods v. SouthernCare, Inc.*, No. 3:09-CV-00313-CWR-LRA, 2013 WL 1339375, at *1-2 (S.D. Miss. Mar. 30, 2013).

[3] Summary judgment based on lack of jurisdiction will be granted only if "viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute a[s] to any material fact and the movant is entitled to judgment as a matter of law." *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(a)).

> administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2006 & Supp. 2009).[4]  An "original source" is "an individual who [1] has direct and independent knowledge of the information on which the allegations are based and [2] has voluntarily provided the information to the Government before filing an action under this section which is based on the information."  *Id.* § 3730(e)(4)(B).  In *Rockwell International Corp. v. United States*, the Supreme Court clarified that relators need not have direct and independent knowledge of the information underlying the publicly disclosed allegations to qualify as original sources, but instead must have direct and independent knowledge of "the information upon which the relators' allegations are based."  549 U.S. 457, 470-72 (2007).  Furthermore, a relator is not required to be *the* original source, but may be one of multiple original sources.  *See United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 355 (5th Cir. 2003), *abrogated on other grounds by Rockwell*, 549 U.S. at 470-72.

In the present case, this Court previously determined that the Relators' action is based upon public disclosures and that the Relators have presented sufficient evidence to survive summary judgment on the issue of whether they have direct and independent knowledge of the information on which their allegations are based.  Docket No. 83.  Thus, pursuant to the original source exception to the public disclosure bar, the Court has jurisdiction over the Relators' claims if each Relator presents evidence that she "voluntarily provided the information to the Government before filing an action . . . ."  31 U.S.C. § 3730(e)(4)(B).

In *Rockwell*, the Supreme Court noted that "[s]urely the information one would expect a relator to 'provide to the Government before filing an action . . . based on the information' is the

---

[4] Amendments to the public disclosure provisions became effective in 2010, but the amendments do not apply to suits pending at the time the amendments became effective.  *Jamison*, 649 F.3d at 326 n.6.

information underlying the relator's claims." 549 U.S. at 471. However, the Court did not elaborate any further on the pre-filing disclosure requirement of the original source rule. *See id.* at 476 ("[W]e need not decide whether [the relator] met the second requirement of original-source status, that he have voluntarily provided the information to the Government before filing his action.").

On several occasions, the Fifth Circuit has determined whether a relator satisfied the pre-filing disclosure requirement, but it has not expounded on how specific or comprehensive the information provided to the Government must be. *See, e.g.*, *United States ex rel. Fried v. West Indep. Sch. Dist.*, 527 F.3d 439, 442 n.2 (5th Cir. 2008) (stating in a footnote that relator "provided the Government the information he had before filing suit"); *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 452 n.3 (5th Cir. 1995) ("Nor did FRS demonstrate that it 'voluntarily provided the information to the Government before filing an action.' 31 U.S.C. § 3730(e)(4)(B). Although not impossible, it is highly unlikely that FRS contacted the government during the 5-day time span between FRS's incorporation and the filing of this suit."); *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 177 (5th Cir. 2004) ("It is undisputed that Reagan provided her 'information' to the government before filing this *qui tam* action[.]"); *United States ex rel. Barron v. Deloitte & Touche, L.L.P.*, 106 F. App'x 284, 285-86 (5th Cir. 2004) (unpublished) ("[T]he original qui tam complaint and disclosure statement, which contained 'substantially all material evidence and information' in Barron and Scheel's possession regarding the allegedly fraudulent activities, were served on the government . . . several months prior both to the June 1999 Senate hearings and to the filing of the present suit.").

A review of *Federal Recovery Services, Inc. v. United States*, sheds some light on the

pre-filing disclosure requirement, although the case does not specifically address the issue. *See* 72 F.3d at 452. In *Federal Recovery Services*, the Fifth Circuit briefly discussed 31 U.S.C. § 3730(d)(1), an FCA provision that "provides for the award to the relator of up to 10% of the proceeds of the action where the action was 'based primarily on disclosures of specific information.'" *Federal Recovery Servs.*, 72 F.3d at 452 (citation omitted). The court stated, "The legislative history discloses that Congress included [§ 3730(d)(1)] to provide for 'the case where the information has already been disclosed and the person qualifies as an "original source" but where the essential elements of the case were provided to the government or news media by someone other than the qui tam plaintiff.'" *Id.* (citation omitted). This language suggests that a *qui tam* relator may qualify as an original source even when she has not provided the Government with *all* of the essential elements of the case before filing suit. It is sufficient for the relator to provide the Government with information that includes any essential element of the fraudulent scheme. *See United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 656-57 (D.C. Cir. 1994) (stating that a relator need not have direct and independent knowledge of "*all* of the vital ingredients to a fraudulent *transaction*," but instead "*any* essential element of the underlying fraud transaction"); *United State ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 274 F. Supp. 2d 824, 852 (S.D. Tex. 2003) (quotation marks and citation omitted) (stating that an original source "must possess some essential information underlying the conclusion that fraud had been committed," and that, therefore, the relator "must show that she is the origin of some evidence showing that [the defendant] has committed fraud"); *United States ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 527 (N.D. Tex. 2012) ("[A] relator need not be the source of information underlying every element of *the complaint's* allegations in order to be an original source of information on which those allegations are based.").

Furthermore, because the relator is not required to have direct and independent knowledge of "each false claim alleged in his complaint," *Reagan*, 384 F.3d at 177 (quoting *Laird*, 336 F.3d at 352-53),[5] she also need not provide the Government with information regarding each false claim included in the complaint before filing her action. This interpretation of the original source rule is consistent with one of the purposes of the rule, which is to limit recovery under the FCA to those who have functioned as true whistleblowers. *See United States ex rel. Wright v. Comstock Res., Inc.*, 456 F. App'x 347, 355 (5th Cir. 2011) (unpublished).

1. The Relators' Evidence

The Relators' Complaint centers around the following allegations:

> Relators discovered and witnessed numerous cases in which SouthernCare has fraudulently admitted patients to hospice services, who do not qualify for the program. Further, Relators have witnessed cases in which SouthernCare has fraudulently re-certified patients who do not qualify for hospice service. Relators have personally reviewed patient documents that have been altered to make it appear that patients qualify for hospice services when, in fact, said patients do not qualify. Further, patient certification and re-certification documents are in direct odds with patient diagnoses from treating physicians. In many cases, certification and re-certification papers do not have required signatures of physicians prior to Medicare and/or Medicaid being billed.

Docket No. 1, at 2-3. Therefore, the Relators qualify as original sources if, in addition to having direct and independent knowledge of the information underlying the above allegations, they became whistleblowers by providing the Government any essential element of the fraudulent scheme before filing their action.

---

[5] In *Laird*, 336 F.3d at 352-353, the Fifth Circuit noted that "we do not read the 'original source' exception to the jurisdictional bar to require that a relator have 'direct' and 'independent' knowledge of each false claim alleged in his complaint to have been submitted by the defendant." *Id.* Instead, the court determined that an original source is an individual who "has 'direct and independent knowledge' of the 'information' on which the allegations in the public disclosure are based." *Id.* at 354. Although *Rockwell*, 549 U.S. at 470-72, abrogated *Laird*'s conclusion that the original source inquiry involves the information underlying the publicly disclosed allegations, there is no indication that post-*Rockwell*, a relator must have direct and independent knowledge of every false claim alleged in the complaint. *See* Joel D. Hesch, *Understanding the "Original Source Exception" to the False Claims Act's "Public Disclosure Bar" in Light of the Supreme Court's Ruling in Rockwell v. United States*, 7 Depaul Bus. & Com. L.J. 1, 23 (2008) ("[T]he relator need not have direct and independent knowledge of all of the facts or false claims comprising a fraud scheme.").

*a. Goolsby*

In an affidavit, Goolsby asserted that she "attempted to notify officials from Medicare or Medicaid of the fraud that was going on at SouthernCare, Inc." Docket No. 84-3, at 1. While an attempted disclosure is not enough to satisfy the original source requirement, Goolsby stated that in response to an auditor's request for information that was missing from a patient's file, she "informed the investigator that it was not there, . . . that it would be the same for many files," and that "there was fraud being covered up by forging and backdating documents." *Id.* The information Goolsby allegedly gave the investigator includes an essential element of the fraud alleged in the Complaint—that SouthernCare altered documents to accomplish its fraud against the Government—and thus is sufficient information to satisfy the pre-filing disclosure requirement.[6]

*b. Rieder*

Rieder averred that while employed with SouthernCare, she called the Medicare/Medicaid Fraud Hotline and informed a Medicare/Medicaid employee, Betty Green, of "fraudulent billing, inappropriate patients, backdating of documents, forging of physician signatures, and cited specific patient examples to her." Docket No. 84-1, at 1. In response to a request from Green for names of inappropriate patients, Rieder faxed Green a list of seventy names on February 21, 2007. *Id.* Additionally, Rieder spoke to Green multiple times on the telephone. *Id.* Rieder has presented sufficient evidence to survive summary judgment on the issue of whether she gave the Government information regarding essential elements of

---

[6] Goolsby also avers that in 2008 she wrote a letter to the E.E.O.C. that included allegations of fraud. Docket No. 84-3, at 1. However, the letter does not help establish her original source status because it was not directed to an appropriate government agency since the E.E.O.C. is not responsible for investigating or addressing fraud or abuse in the Medicare or Medicaid programs.

SouthernCare's allegedly fraudulent scheme before filing her lawsuit.[7]

       *c. Woods*

Woods' affidavit includes the following assertions:

> On several occasions, while I was employed at SouthernCare, Inc., I reported fraud to Medicare/Medicaid officials, or persons with name tags indicating they were with the government programs. I believed them to be auditors and investigators.
>
> On one specific occasion, I recall two government officials who appeared to be with Medicare and/or Medicaid came to the Flowood office. They were seated by the clinical directors in the conference room. One lady had black hair, and the other red tinted hair. I was at my desk completing patient paperwork. Charlie Boykin and Michelle Hubbard were handing specific files to the officials. I went into the room while they were in the back receiving a file for the officials. I told the officials that the documents that they were reviewing were not as they seemed, and that there was mass backdating and forging of physician names occurring. I mentioned that R.S., one of my patients, was inappropriate and had been on the service for approximately twelve years.
>
> . . .
>
> On several occasions while I was in the Clinton office, the Medicare/Medicaid officials would come into the office. . . . The officials would be placed in the front of the office, and if they requested a file that did not already have appropriate signatures, people would be in the back forging the names of physicians and backdating documents as the files were requested. On at least one occasion, I told the officials that they were sitting in the back forging the physician names and dates on the files that they requested. This was just before I was moved to the Flowood office in 2008. With the actions of SouthernCare, Inc. of forging physician names and backdating documents, it would be almost impossible for an outside investigator to see the fraud.

Docket No. 84-2, at 1-2. Woods' affidavit suggests that she informed the Government of essential elements of the fraud that the Relators allege in their Complaint, which satisfies the pre-

---

[7] Rieder states that she also informed her superiors and SouthernCare's corporate office about the fraud. *See* Docket No. 84-1, at 2. Because SouthernCare is not a government entity, Rieder's assertion that she reported fraud to SouthernCare's corporate office and to her superiors is irrelevant to the original source inquiry. Additionally, both Rieder and Woods state that the Relators provided written disclosure to the Government "[w]ith the filing of the Complaint," and that they met with United States Attorneys on August 6, 2009. Docket No. 84-1, at 2; Docket No. 84-2, at 2. SouthernCare correctly argues that because the relevant consideration is what information the Relators disclosed to the Government "before filing an action," the Relators' post-filing disclosures are irrelevant to the original source analysis. 31 U.S.C. § 3730(e)(4)(B).

filing disclosure requirement.

### 2. Analysis of SouthernCare's Arguments

SouthernCare argues that the Relators must demonstrate that they provided the Government with *specific* information supporting the allegations of fraud in their Complaint. *See* Docket No. 85, at 5. Although SouthernCare considers the Relators' oral disclosures to the investigators to be too general, according to the Relators' affidavits, Rieder gave the Medicaid/Medicare officials specific patients' names to support her allegations, *see* Docket No. 84-1, at 5-7, and Woods gave the officials at least one patient's name as an example of SouthernCare's fraud, as well as names of SouthernCare employees who were involved in the scheme, *see* Docket No. 84-2, at 1. Furthermore, the Relators' information regarding SouthernCare's scheme of forging and backdating documents—sometimes when investigators were present—at the offices at which the Relators worked is specific enough to notify the Government that fraud was occurring, and to arm the Government with information regarding how SouthernCare was circumventing the Government's detection of fraud. The information that each Relator disclosed to the Government was sufficient because it consisted of at least one essential element of the allegations of fraud included in the Complaint. *See, e.g.*, *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832, 837 (D.C. Cir. 2012) (finding that relator's letter to the Inspector General of the U.S. Department of Health & Human Services, which stated that the defendants "do not have in their possession documentation to support a drawdown of federal medicaid funds for [1996–1998]," was sufficient to satisfy the pre-filing disclosure requirement).[8]

---

[8] SouthernCare suggests that *United States ex rel. Davis v. District of Columbia* supports dismissal of the Relators' action because it requires a relator to disclose information to the Government before the public disclosure. *See* Docket No. 85, at 11-12. However, SouthernCare refers to the 2011 district court case, 773 F. Supp. 2d 21, 32-34 (D.D.C. 2011), to which the Relators cite in their submission of evidence. That case was vacated by the D.C.

The main cases that SouthernCare relies on in arguing that the Relators' disclosures were not specific enough are *In re Natural Gas Royalties*, 562 F.3d 1032, 1043 (10th Cir. 2009), and *United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 782 F. Supp. 2d 248 (E.D. La. 2011). SouthernCare cites *In re Natural Gas Royalties* for the proposition that a relator cannot qualify as an original source if the relator "withheld essential elements of the fraud transaction from his pre-filing disclosure and thus 'deprived the government of key facts necessary in its efforts to confirm, substantiate or evaluate the fraud allegations.'" 562 F.3d at 1043-44 (brackets omitted) (quoting *United States ex rel. King v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1281 (10th Cir. 2001)). As explained below, *In re Natural Gas Royalties* does not suggest that the Relators should be disqualified from being original sources.

*In re Natural Gas Royalties* applies the holding of *United States ex rel. King v. Hillcrest Health Ctr., Inc.*, in which the relator's attorney met with Assistant United States Attorneys to discuss the relator's allegations before filing a *qui tam* action, but did not disclose who the relator was or who the defendant was. 264 F.3d at 1279-80. In *King*, the Tenth Circuit held that the relator did not qualify as an original source because he withheld "his identity and the identities of the potential defendants," which constituted "essential elements of the fraud transaction." *Id.* at 1281. The court reasoned that "[w]ithout the identities, the information behind the allegations essentially remains in the relator's possession and undisclosed to the government, and what has been disclosed could be said to be little more than a hypothetical account given by an attorney." *Id.* Similarly, in *In re Natural Gas Royalties*, the Tenth Circuit found the relator's pre-filing disclosures to be deficient where the relator "provided the government with no information regarding any named Defendant in several of the . . . *qui tam* cases." 562 F.3d at 1045. In the cases in which the relator did provide the government with

---

Circuit in 2012. *See Davis*, 679 F.3d at 832.

information regarding a specific defendant, the court found that the relator's knowledge of the information was second-hand and therefore did not constitute "direct and independent knowledge." *Id.* at 1045-46.

The two Tenth Circuit cases are distinguishable from the present case. In this case, according to the Relators' affidavits, they did not withhold the type of essential information at issue in *King* and *In re Natural Gas Royalties*, since their disclosures to Medicare/Medicaid officials singled out SouthernCare as the perpetrator of fraud, and since they communicated directly with the officials such that their identities were known rather than concealed as in *King*. Furthermore, the Relators have presented evidence that their knowledge of the disclosed information is not second-hand. Thus, *In re Natural Gas Royalties* does not suggest that the Relators are not original sources.

In arguing that general statements to the Government are insufficient to meet the voluntary disclosure requirement, SouthernCare also relies heavily on a Louisiana district court case, *United States ex rel. Branch Consultants, L.L.C. v. Allstate Insurance Co.*, in which the court concluded that the relator did not meet the pre-filing disclosure requirements as to several defendants. *See* 782 F. Supp. 2d at 268-72. In that case, the relator, consulting firm Branch Consultants, L.L.C., alleged that numerous insurance companies defrauded the National Flood Insurance Program by shifting the costs of paying for wind damage to the Government by claiming that damage caused by wind was caused by flooding that followed Hurricane Katrina. *Id.* at 253-54.

*Branch Consultants*' holding that the relator's pre-filing disclosures were insufficient was consistent with that of *In re Natural Gas Royalties* and *King* in that the holding was based in large part on the fact that the disclosures did not specifically identify each defendant in the

action.  *See Branch Consultants*, 782 F. Supp. 2d at 270-71 (noting that "Branch's original written disclosure contains absolutely no specific information as to Standard Fire, Liberty Mutual, SIMSOL, or Pilot" and "does not list any specific properties that were insured or adjusted by these defendants," although it asserts generally that "all of the defendants engaged in loss-shifting fraud"); *see also id.* at 272 (stating that "Branch's first two written disclosures . . . do not mention Colonial at all," and that Branch did not "indicate that it made specific oral disclosure about Colonial to the government").  The court found that the disclosures' general assertions that "all of the defendants engaged in loss-shifting fraud" were  "of the same general nature" as the public disclosures that barred the court from exercising jurisdiction over the *qui tam* action, and did not reveal "additional compelling facts."  *Id.* at 271 (citations omitted).  The court concluded that "[t]hose general statements do not suffice to make Branch an original source as to those defendants."  *Id.*  Similarly, the court found that the relator did not meet the burden of proving that its attorney "disclosed sufficient information for Branch to be considered an original source as to these defendants" when its attorney spoke to an Assistant United States Attorney before filing the lawsuit.  *Id.*  The court found that the attorney's "summary of this conversation [was] general in nature and [did] not identify which specific defendants and exemplar properties, if any, were discussed."  *Id.*

As to two of the defendants, the court did not find the relator's pre-filing disclosures to be inadequate because "the original written disclosure contain[ed] at least some specific information as to [those] defendants."  *Id.* at 272.  Similarly, in the present case, before filing their lawsuit, the Relators provided specific information to the Government regarding SouthernCare's fraudulent scheme of backdating and forging documents.  Unlike many of the defendants in *Branch Consultants*, which were not specifically named in Branch's pre-filing disclosures,

SouthernCare is the only defendant in this action and the only entity identified by the Relators in their pre-filing disclosures as participating in the fraudulent scheme. The Relators' disclosures were, therefore, sufficiently specific.

SouthernCare also argues that the information that the Relators provided to the Government before filing their action must involve the same time frame as the fraudulent claims alleged in the Relators' Complaint. In other words, because the Relators' Complaint includes alleged false claims arising from improper patient certification and recertification that occurred after September 1, 2008, SouthernCare contends that the Relators must have provided the Government with information from that same time period to qualify as an original source. The text of the statute does not, however, suggest that a relator shall be disqualified from being an original source because she provided the Government with information too early, and SouthernCare has cited no cases that support that interpretation.[9] Under the facts of this case, it is sufficient that the Relators provided the Government with information that involves the fraudulent scheme that is the basis of the Relators' Complaint, even if that information does not include the exact examples of fraud included in the Relators' Complaint, or the exact time frame included in the Complaint.

---

[9] One of the purposes of the FCA is to "encourage those with knowledge of fraud to come forward." *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994) (discussing whistleblower provision of FCA). The FCA does not suggest that a whistleblower must wait until she has collected all of the information that supports a *qui tam* action before coming forward with information of fraud. If the pre-filing disclosure provision requires a relator to furnish the Government with all of the information she collected leading up to the filing of the complaint, § 3730(b)(2), which states that "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government" when the relator initiates an FCA action, would be redundant because the relator would have already disclosed that same information before filing the lawsuit.

## CONCLUSION

For the foregoing reasons, SouthernCare's Motion to Dismiss is DENIED. Within ten days, the parties are directed to contact the chambers of the magistrate judge assigned to this action to schedule a Case Management Conference.

**SO ORDERED**, this the 30th day of September, 2013.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
